THE PEOPLE, RESPONDENT, *v.* FRANCIS, APPELLANT.

APPEAL from the District Court of San Juan, Section 2.

No. 527.—Decided June 10, 1913.

INVOLUNTARY MANSLAUGHTER COMMITTED WITH AN AUTOMOBILE.—It was shown in this case that the accused left a garage driving an automobile which had just been repaired in order to test the machine; that notwithstanding this he drove at a high rate of speed within the urban zone of San Juan, and that although he saw a human being crossing the street at a distance of about 15 meters he kept up the rate of speed without sounding the horn or applying the emergency brake and ran over and killed the person and still kept on running. It was held that the facts showed the accused guilty of the crime of involuntary manslaughter with which he was charged.

ID.—NEGLIGENCE OF CHAUFFEUR—CONTRIBUTORY NEGLIGENCE OF VICTIM.—In cases of this kind the prosecution is not obliged to prove that the victim did not contribute to the accident by his own negligence, it being sufficient to show only that the accused was imprudent or negligent, inasmuch as it is the intention of the law to punish the imprudence or negligence of the accused. The prevailing rule is that there is no analogy between a civil action for indemnity to the injured person and a criminal prosecution for the punishment of the crime.

ID.—NEGLIGENCE OF VICTIM—MITIGATING CIRCUMSTANCES.—The accused may plead the negligence of the injured party and it should be taken into consideration to mitigate the guilt of the accused, but in order that said negligence may· constitute a complete justification and totally exempt the accused from responsibility, it must be of such a nature as to convey to the mind of the court the conviction that said negligence was more than contributory and was the sole cause of the accident.

The facts are stated in the opinion.

*Mr. E. B. Wilcox* for appellant..

*Mr. Frank Martínez,* acting *fiscal,* for The People.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from a decision of the District Court of San Juan, Section 2, of May 21, 1912, refusing to grant a new trial in the case of The People against James Francis for involuntary manslaughter, decided by a judgment rendered on the same 21st day of May, 1912.

On October 9, 1911, the district *fiscal* of San Juan filed an information against James Francis, charging:

"That on or about August 23, 1911, the said James Francis, while driving an automobile through the streets of San Juan without exer-

cising proper prudence and care, did unlawfully cause the death of Encarnación del Manzano y Sucre.''

The accused pleaded not guilty and elected a trial by jury. The case was finally tried on May 15, 1912, and after both parties had introduced their evidence and the court had charged the jury, said jury returned a verdict of guilty. The court refused to grant a new trial and in accordance with the verdict sentenced the culprit to five years' imprisonment in the penitentiary at hard labor.

The following are the errors which the appellant claims were committed by the trial court:

''1. That the verdict was not justified by the evidence and was therefore contrary to the same.

''2. That the court failed to include in its instructions to the jury the essential points of the defense with the fulness and clearness which the circumstances required pursuant to section 233, paragraph 8, of the Code of Criminal Procedure, as amended by the Legislature of 1911.

''3. That the court erred further in those parts of its instructions concerning the weight of the evidence which the accused should introduce in order to justify the homicide in expressing itself as follows: 'Besides, in order to refute (*sic*) a charge of negligence on the part of the injured person the jury must be satisfied by a preponderance of the evidence of the following conditions or requisites: First, that the victim was negligent, and second, that said negligence undoubtedly contributed to cause the injury which he sustained, and on this account the accused should not be held responsible. Therefore, in order that the accused may not be considered responsible it must be shown to you by a preponderance of the evidence that such negligence contributed directly to cause the accident (page 4 of the record). And in order to consider the negligence on the part of the injured party, as in the present case, it is necessary that you be shown, as I have said, gentlemen of the jury, by a preponderance of the evidence beyond all doubt that the deceased was negligent and that the accident was the direct result of said negligence.' ''

We will examine the first assignment of error. The evidence introduced at the trial is included in a statement of the

case duly approved and attested.   The first witness who tes-
tified for the prosecution was Rufino Alomar.   Certain dis-
crepancies may be noted in his testimony, but, taken as a
whole, it may be considered to establish the following facts:
That the automobile was sent to the *garage* for repairs; that
it was taken apart and put together again and that on the day
of the accident the accused, Francis, who acted as *chauffeur,*
accompanied by several other persons including the witness,
took the machine out to test it; that the automobile was a
30-horsepower machine and ran on high speed; that while
returning to the *garage* on making the turn to go down to the
Marina "an old woman was walking along across our route
and we struck her, the car passing over her body and going
on some distance"; that they saw the old woman when she
was at a distance of about 15 meters; that the witness was
unable to say whether the speed of the automobile was re-
duced; that the emergency brake was not applied because it
was broken; that "the automobile was being returned to the
*garage* to fix the emergency brake which was broken; that
when the car struck the woman we were on the way to the
*garage* to leave the car to be repaired the following day as
the emergency brake was broken"; that when the accident
occurred the witness jumped off the automobile and ran home,
where he was sought by the police.

The second witness for the prosecution was Pedro San-
guinet, an Insular policeman, who was near the place at the
time of the accident.   He observed the rapid speed of the
automobile, the curve it described in going down to the Marina
and the fact that it failed to sound its horn or stop after strik-
ing and killing the old woman instantly.

The third witness was another policeman named Vicente
Rivera.   He testified that the car was going at a rapid rate
of speed and that the *chauffeur* did not sound the horn; that
"the brake was not applied because when the automobile
struck the woman it did not stop"; that the car stopped at a
distance of 30 or 40 meters; that "what drew his attention to

the striking of the woman was the high rate of speed at which the automobile was going''; that in ascending the hill the car was traveling at more than the ordinary rate of speed; that he did not arrest the *chauffeur* because he was going too fast; that when the automobile went down the hill the speed was even more rapid; that he did not warn the woman because the woman was killed before he had time to do so; that the accused was driving the automobile; that the automobile ascended the hill, made the turn behind the kiosk of the Marina, took the curve and descended again and it was then when it struck the woman, who was near the sidewalk, in fact almost upon it.

The fourth and last witness for the prosecution was Dr. Cueto who testified that he made an autopsy on the body of the deceased which showed cadaverous discolorations with pronounced ecchymosis; that the sixth, seventh and eighth ribs, the right leg and the skull were fractured, the ribs being collapsed.

There were five witnesses who testified for the defense, namely:

Charles R. Manes, who testified that he had known the accused for 12 years and always considered him a prudent and hard-working man.

Domingo Fernández, who testified that he was one of those who rode in the automobile; that ''they made the trip to test the machine in order to ascertain whether it was in fit condition to be delivered to the owner''; that in going down they saw the woman some distance away; that the horn was sounded to give warning to a horse cart; that it appears that the woman heard the horn and started back to the sidewalk, wherefore it was impossible to avoid striking her; that the automobile was not in good order as ''it did not work well and that was the reason it continued running''; that when the accident occurred he jumped out and ran away simply because he did not wish to be summoned to testify.

Leopoldo Fernández, who was also in the automobile, tes-

tified that when the automobile made the turn "the woman was coming out of the *Bosque* and a horse cart was coming behind her; that the accused sounded the horn and then "the woman started back and was struck by the left mud-guard of the car"; that the automobile was traveling at a speed of about six or seven miles per hour.

Segundo Hernández, another of the occupants of the automobile, testified that they went out to try the machine, went up by the arsenal, and in making the turn at the curve of the *Bosque* the woman started to cross some distance away from the car, as did also a horse cart; that the horn was sounded, the woman became frightened and turned back when she was struck by the automobile and killed; that the witness jumped from the car while it was still running and left the spot.

James Francis, the accused, testified that he is a machinist; that he has been working on the Island for 12 years; that they took out the automobile to test it; that he drove it because the *chauffeur* refused to do so until it had been tested; that in going down the hill he observed a horse cart ahead loaded with lumber and sounded the horn for it to turn out, "and just then the old woman was crossing and, upon hearing the horn, jumped and started back and at the moment he could not stop the machine which ran over the old woman"; that he was unable to apply the emergency brake as he had both hands on the wheel; that if he had applied the emergency brake, probably he would have been able to stop the car, but as the distance was very short he thought the old lady would not turn back because she was passing already, but when he sounded the horn she jumped back and when he saw this he applied the foot brakes in order to swerve to one side and thus avoid striking her; that he was traveling at the speed of from 6 to 8 miles per hour.

The above is a summary of the evidence taken from the statement of the case on which the jury based its verdict and in our opinion is sufficient to support it.

It appears therefrom very clearly that an automobile was

being tested, driven by the accused because the *chauffeur* in charge of it refused to do so; that notwithstanding this the accused put the automobile at high speed and if we, as the jury did, give credence to the witnesses for the prosecution, ran at a rapid rate of speed through an urban zone; that although he saw a human being crossing the street at a distance of about 15 meters, he did not sound the horn but continued his course down the hill at great speed and, without applying the emergency brake, ran over the person and killed her and still continued running, producing such an effect on the occupants of the automobile that nearly all of them fled precipitately from the scene of the accident.

Such an act cannot be allowed to go unpunished. The law (Acts of 1910, p. 137) provides that while within the urban zone of a municipality automobiles shall not travel at a greater rate of speed than 16 kilometers an hour. It is very difficult to estimate by simple sight the number of kilometers which a vehicle is running, but a speed of 16 kilometers an hour is such as not to attract attention, whereas in the present case one of the witnesses testified that his attention was called to the accident precisely on account of the great rate of speed at which the automobile was traveling.

The law also provides (Acts of 1910, p. 138) that on rounding a curve a person driving an automobile must give due notice by sounding the horn or by other similar means, and that when meeting or overtaking any person on the road, in a vehicle or otherwise, the driver of an automobile must give due warning and reduce his speed to such a limit as will insure the safety of the person who is being passed or overtaken. These provisions of law were violated in the present case by the accused who, at full speed, without blowing the horn, rounded the curve at the *Bosque* and went down the hill, and although he saw Mrs. Manzano and a horse cart at a sufficient distance, he did not reduce the speed of his car, and, instead of safeguarding the life of the person whom he was approaching, he killed her.

The first of the errors assigned not having been committed, we will examine the second and third together as both refer to the instructions given by the court to the jury.

In regard to the contention that the court failed to include in its instructions to the jury the essential points of the defense of the accused, we will say that we have examined carefully said instructions in their entirety and in our opinion they contain a sufficient explanation of the law applicable to the case and of the circumstances which would excuse such an act as that committed by the accused.

And in regard to the instructions specifically pointed out as erroneous relative to the proof of the contributory negligence of the deceased, we will say that if any error was committed by the court, said error was not prejudicial to the accused.

"The prevailing rule, however, is that there is no analogy between a civil case of pecuniary compensation to the injured person and a criminal case for the punishment of guilt, and that there can be no balance of blame in charges of felony; and that, therefore, a charge of negligent homicide will lie where death ensues from injuries negligently inflicted, though the person killed may have contributed to his own death by his own negligence." Wharton on Homicide, p. 725.

This is easily understood because what is sought in a criminal case of this nature is the punishment of the imprudence or negligence of the accused, and if the prosecution shows beyond a reasonable doubt that said imprudence or negligence existed to such an extent that the same may be considered the true and principal cause of the injury, it will have proved the existence of the offense and will not be required to prove that the injured party did not contribute to the commission of the injury by his negligence.

The accused is entitled undoubtedly to plead the negligence of the injured party as a defense, and it is true also that if it is alleged by the accused and proven, or if it is brought out in the evidence of the prosecution itself, it may be taken into

consideration to mitigate the responsibility of the accused; but in order that such negligence may constitute a complete justification and totally exonerate the accused from responsibility, it must be of such a nature as to convey to the mind of the court the conviction that such negligence was more than contributory and was the sole cause of the accident.

A man wilfully, negligently and thoughtlessly lies down in the middle of a road. A *chauffeur* sees him from a distance and merely toots his horn without lessening speed in the belief that the man will get up. Either because he cannot or does not care to, the man does not get up, and when the *chauffeur* attempts to reduce speed it is too late. The car passes over his body and kills him. In our judgment, even in this case the *chauffeur* is criminally responsible and although the negligence or fault of the deceased may be considered in mitigation of the responsibility of the accused, it would not serve to exonerate him from all blame.

On the other hand, if it is shown that a *chauffeur* is driving his car through a street or road with due regard to the requirements of law and another person wilfully, negligently and thoughtlessly attempts to cross when the car is so near him that it is impossible for the *chauffeur* to stop the car even by applying the emergency brake and the car strikes and kills the person, the negligence attaches solely to the deceased and the *chauffeur* would be exempt from responsibility.

In view of all the foregoing and bearing in mind that although the court's instructions to the jury contain the paragraphs quoted separately by the appellant, said instructions conclude in the following manner:

"If you believe that the accused when driving the automobile in the manner described by the *fiscal* in his information did so without the necessary prudence and circumspection; if you believe that all the elements of the offense charged have been proven, then it is your duty to return a verdict of guilty against the accused. If, on the contrary, you believe that the facts did not occur as stated by the witnesses for the prosecution, that is, that the accident was not due to

the negligence and carelessness of the *chauffeur*, but to the acts of the deceased in putting herself in a position by which the accused could not avoid the accident, then it is your duty to acquit the accused, who is entitled also to the benefit of any reasonable doubt. If there is any circumstance which causes your minds to hesitate in considering the facts, although giving credence to the testimony of the witnesses, it is your duty also to give the accused the benefit of that reasonable doubt and acquit him. Have the parties any written instructions?'' ''None.''

It appearing that all the evidence was submitted to the jury and that it proves the commission of the offense charged and therefore justifies the verdict of the jury and the judgment of the court, we are of the opinion that in the interests of justice the appeal taken should be dismissed and the judgment appealed from affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf and Aldrey concurred.

Mr. Justice MacLeary did not take part in the decision of this case.